UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| RONALD DUMAS,<br><br>        Plaintiff,<br><br>  vs.<br><br>NEW UNITED MOTOR MANUFACTURING, INC. ("NUMMI"), a California Corporation; GARRETT EMERY, an individual; a business entity of unknown form; and DOES 1-20, inclusive,<br><br>        Defendants. | Case No: C 09-05290 SBA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING STATE LAW CAUSES OF ACTION**<br><br>Docket 53 |

      Ronald Dumas ("Dumas") filed the instant pro se action against his former employer, New United Motor Manufacturing, Inc. ("NUMMI"), and Garrett Emery ("Emery"), his supervisor at NUMMI. He alleges claims under the federal Family and Medical Leave Act ("FMLA"), as well as state law. The parties are presently before the Court on NUMMI's Motion for Summary Judgment. Having read and considered the papers filed in connection with this matter, and being fully informed, the Court hereby GRANTS NUMMI's motion as to Plaintiff's federal claims. The Court declines to assert supplemental jurisdiction over Plaintiff's remaining state law causes of action, and therefore DENIES NUMMI's motion with respect to such claims, which are remanded to state court. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b).

# I. BACKGROUND

## A. FACTUAL OVERVIEW

Dumas, an African-American male, began working as a team member in Defendant NUMMI's body and welding manufacturing division in 1988. First Amended Complaint ("FAC") ¶¶ 1, 6, Dkt. 1-1 Ex. A. He worked at NUMMI's Fremont, California vehicle assembly factory until it ceased operations in April 2010. Wakefield Decl. ¶ 4, Dkt. 54; Bellafronto Decl. Ex. 1 ("Dumas Dep.") at 215, Dkt. 55-1. At all times during his employment with NUMMI, Dumas was a union member subject to a collective bargaining agreement (the "CBA"). Dumas Dep. at 73, 81.

Between April 1999 and February 2010, Dumas took several medical leaves under the Family Medical Leave Act ("FMLA") totaling over 300 work days. Wakefield Decl. Ex. 2, Dkt. 54-2. In September 2005, he took a leave of absence due to a purported carpal tunnel injury. Dumas Dep. at 121. He remained on workers' compensation leave until November 2007. Id. When Dumas returned to NUMMI, he began working under Defendant Emery. Id. at 121-22, 313. Emery and other NUMMI employees allegedly subjected Dumas to various forms of harassment after he returned to work in November 2007. See FAC ¶¶ 7-10; Dumas Dep. at 42-54, 121-25, 142-50.[1]

After Dumas returned from his workers' compensation leave—and during the period when Emery allegedly harassed him—NUMMI disciplined Dumas on at least three occasions due to his unexcused absences from work. Wakefield Decl. Ex. 3, Dkt. 54-3. Approximately fourteen months after his return from leave, on January 13, 2009, NUMMI notified Dumas that he was being suspended for five days in accordance with its Standards of Conduct and Good Attendance. Wakefield Decl. ¶ 12 & Ex. 5, Dkt. 54-5. He was to serve his suspension from January 26 to 30, 2009. Id.

Shortly after issuing the five-day suspension, NUMMI determined that one of the

---

[1] The Court does not address these incidents in detail because Dumas's federal claims relate only to NUMMI's decision to discipline Dumas, place him on administrative leave, and terminate his employment. See FAC ¶¶ 18, 32-36.

absences triggering Dumas's suspension may have qualified as FMLA leave.  Wakefield Decl. ¶ 13.  Dumas missed his scheduled work shifts on January 20, 21, 22, and 23, 2009.  Id. ¶ 14a.  On January 23, NUMMI labor representative Ralston Brown ("Brown") contacted Dumas on the telephone.  Id. ¶ 14b & Ex. 8, Dkt. 54-8.  The parties dispute whether Brown told Dumas that his suspension was rescinded and that he should report to work on January 26.  Wakefield Decl. ¶ 14b & Ex. 8; Dumas Dep. 165-66.  Dumas missed his scheduled work shifts on the dates of his now-rescinded suspension, i.e., January 26, 27, 28, 29, and 30, 2009.  Wakefield Decl. ¶ 14c.  He provided no notice or documentation to NUMMI regarding either his absences from January 20 to 23 or those from January 26 to 30.  Id. ¶ 14d.

On February 2, 2009, NUMMI informed Dumas that his nine unexplained absences between January 20 and 30 violated Article XI, Section 3, paragraphs (c) and (d) of the CBA.  Id. Ex. 6, Dkt. 54-6.  The CBA provides in part:

> Seniority will be broken and lost, and employment shall cease for the following reasons: . . .
> c.  Failure to report to work for four (4) consecutive working days without prior notice, unless unusual conditions or circumstances exist;
> d.  Failure to report to work within six (6) consecutive working days (excluding Saturday and Sunday) without a Company approved leave of absence unless unusual conditions or circumstances exist[.]

Id. Ex. 4 at 26-26, Dkt. 54-4.  NUMMI met with Dumas the same day to determine if he had any unusual conditions or circumstances to justify his absences, and placed Dumas on administrative leave when he offered no explanation.  Wakefield Decl. ¶ 18 & Ex. 7, Dkt. 54-7; Dumas Dep. at 226.[2]

NUMMI continued to seek an explanation for Dumas's absences while he was on administrative leave.  Wakefield Decl. ¶¶ 20-22 & Exs. 9-11, Dkts. 54-9, 54-10, 54-11

---

[2] Dumas alleges that he was fired and not placed on administrative leave.  FAC ¶ 10.  However, he does not recall being informed that he was, in fact, fired, Dumas Dep. at 171, and NUMMI's records show that he was never terminated and that his benefits were never interrupted during his administrative leave, see Wakefield Decl. ¶ 25.

1   (describing letters, phone calls, and a second meeting where NUMMI sought explanation).
2   Finally, on April 22, 2009, Dumas sent NUMMI a letter claiming that his absences on
3   January 20 and 21, 2009, were protected under the FMLA.  Id. Ex. 12, Dkt. 54-12.  He
4   claimed that his absence on January 22, 2009, was due to stress.  Id.  Lastly, he claimed that
5   January 23, 2009, was a scheduled day off.  Id.  He provided no facts or documentation to
6   support any of these claims, and he offered no explanation at all for his absences from
7   January 26 to 30, 2009.  See id.
8       In light of Dumas's incomplete explanation of his absences, NUMMI continued to
9   investigate the reason for his absences.  Wakefield Decl. ¶ 24.  Although the CBA
10  authorized NUMMI to terminate Dumas's employment due to his failure to explain the
11  January 26 to 30 absences, NUMMI, out of an "abundance of caution," nonetheless allowed
12  him to return to work.  Id.  Dumas returned to his position as a production team member on
13  July 27, 2009, subject to a "last chance agreement" specifying that any further violations of
14  company policy would result in immediate termination.  Id.  He continued working at
15  NUMMI until it shut down its operations in April 2010.  Id., Dumas Depo. at 215.

16      **B.   PROCEDURAL HISTORY**

17      Dumas filed a pro se Complaint against NUMMI and Emery in Alameda County
18  Superior Court on February 18, 2009.  Notice of Removal ¶ 1, Dkt. 1.[3]  On June 30, 2009,
19  Dumas filed a FAC, which raises the following eight claims for relief:  (1) wrongful
20  termination in violation of public policy; (2) breach of the covenant of good faith and fair
21  dealing; (3) negligent infliction of emotional distress; (4) violation of California Business
22  and Professions Code section 17200, et seq.; (5) retaliation for taking protected family

---

[3] There is no indication in the record that Emery was served and he has not appeared in the action.

1 leave; (6) battery; (7) hostile work environment; and (8) racial discrimination.[4]  NUMMI
2 filed a general denial pursuant to California Code of Civil Procedure section 431.30 on
3 October 30, 2009.  Notice of Removal ¶ 3.  On November 6, 2009, NUMMI removed the
4 action to this Court pursuant to 28 U.S.C. §§ 1441(b) and (c).  See id. ¶ 9.
5     On August 2, 2011, NUMMI filed a motion for summary judgment as to each of the
6 claims alleged in the FAC.  Mot. Summ. J., Dkt. 53.  In support of its motion, NUMMI
7 submitted two declarations which include a total of eighteen attached exhibits.  See
8 Wakefield Decl.; Bellafronto Decl.  On August 9, 2011, Dumas filed his Opposition, along
9 with three declarations and various exhibits.  Opp'n, Dkt. 59; Robinson Decl., Dkt. 60; First
10 Dumas Decl., Dkt. 61; Second Dumas Decl., Dkt. 62.  NUMMI filed a Reply on August
11 16, 2011.  Reply, Dkt. 64.  NUMMI objects to certain of the evidence Dumas has proffered
12 in support of his opposition.  Therefore, before addressing the merits of NUMMI's motion,
13 the Court, as a threshold matter, determines the universe of admissible evidence that may
14 be considered in connection with the motion.

15 **II.    LEGAL STANDARD**

16     Federal Rule of Civil Procedure 56 provides that a party may move for summary
17 judgment on some or all of the claims or defenses presented in an action.  Fed. R. Civ. P.
18 56(a).  "The court shall grant summary judgment if the movant shows that there is no
19 genuine dispute as to any material fact and the movant is entitled to judgment as a matter of
20 law."  Id.; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) ("the
21 mere existence of some alleged factual dispute between the parties will not defeat an
22 otherwise properly supported motion for summary judgment; the requirement is that there
23 be no *genuine* issue of *material* fact.").  The moving party bears the initial burden of

---

[4] Dumas's fifth cause of action purports to raise a claim under "the California Family Rights Act 29 C.F.R. 825 et seq."  FAC at 7.  The California Family Rights Act is codified at section 12945.2 of the California Government Code.  The regulations cited by Dumas, i.e., 29 C.F.R. § 825, et seq., are the regulations implementing the federal FMLA. Dumas's Opposition refers to retaliation for taking FMLA leave.  Opp'n at 4.  Because Dumas never cites to the California Government Code, the Court liberally construes his retaliation claim as a claim under the FMLA.

1  demonstrating the basis for the motion and identifying the portions of the pleadings,
2  depositions, answers to interrogatories, affidavits, and admissions on file that establish the
3  absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323
4  (1986); see also Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of
5  materials in the record"). If the moving party meets this initial burden, the burden then
6  shifts to the non-moving party to present specific facts showing that there is a genuine issue
7  for trial. See Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
8  475 U.S. 574, 586-87 (1986).
9      On a motion for summary judgment, courts must view facts in the light most
10 favorable to the non-moving party only if there is a "genuine" dispute about those facts.
11 Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting Scott v. Harris, 550 U.S. 372,
12 380 (2007)). Summary judgment is improper where disputed facts "might affect the
13 outcome of the suit under the governing law," but "[f]actual disputes that are irrelevant or
14 unnecessary will not be counted." Anderson, 477 U.S. at 248. A factual dispute is genuine
15 if it "properly can be resolved . . . in favor of either party." Id. at 250. Accordingly, a
16 genuine issue for trial exists if the non-moving party presents evidence from which a
17 reasonable jury, viewing the evidence in the light most favorable to that party, could
18 resolve the material issue in his or her favor. See id. "If the evidence is merely colorable,
19 or is not significantly probative, summary judgment may be granted." Id. at 249-50
20 (internal citations omitted).

21 **III.   DISCUSSION**
22     **A.   EVIDENTIARY ISSUES**
23     It is well settled that only may consider admissible evidence may be considered in
24 ruling on a motion for summary judgment. See Orr. v. Bank of Am., NT & SA, 285 F.3d
25 764, 773 (9th Cir. 2002). Before a court may consider documentary evidence filed in
26 connection with a motion for summary judgment, the documents "must be authenticated by
27 and attached to an affidavit which meets the requirements of [Federal Rule of Civil
28 Procedure] 56(e)," and the affiant "must be a person through whom the exhibits could be

1  admitted into evidence." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542,
2  1550-51 (9th Cir. 1990) (quotation marks omitted).  Documents and evidence which have
3  not had a proper foundation laid to authenticate them cannot be considered on a motion for
4  summary judgment.  Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir. 1987).

### 1. Declaration Regarding Lodgment of Audio Exhibit

Dumas filed a declaration on August 9, 2011, regarding the lodgment of an audio CD exhibit.  See First Dumas Decl. at 1.  Without elaboration, Dumas states that he "got" the CD from the Oakland office of the Employment Development Department's Appeals Board and that he and two other individuals are "on [the] tape." Id.  NUMMI asserts that the CD is inadmissible.  Reply at 2.  The Court agrees.

Under 28 U.S.C. § 1746, an unsworn declaration subscribed under penalty of perjury may be used in place of a sworn affidavit.  "[B]efore evidence may be admitted, a foundation must be laid 'by evidence sufficient to support a finding that the matter in question is what its proponent claims.'" Beyene v. Coleman Sec. Serv., Inc., 854 F.2d 1179, 1182 (9th Cir. 1988) (quoting Fed. R. Evid. 901(a)); Schroeder v. McDonald, 55 F.3d 454, 460 n.10 (9th Cir. 1995).  Because Dumas's declaration fails to comport with this requirement, the CD is inadmissible.  See Hal Roach Studios, 896 F.2d at 1550-51.  But even if it were, Dumas fails to cite or direct the Court's attention to any particular portion of the audio CD as required by Federal Rule of Civil Procedure 56(c)(1)(A).  See First Dumas Decl. at 1-2.  Rather, Dumas merely states that "[t]his tape clear [sic] all facts in my wrongful termination." Id. at 1.  Therefore, the Court does not consider the audio CD in its resolution of NUMMI's motion for summary judgment.  See Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

### 2. Documents Attached to Declaration

In addition to the CD discussed above, Dumas attached various documents to his lodgment declaration.  See First Dumas Decl. Extra Exs.  As discussed above, Dumas's

- 7 -

declaration is defective because it includes no affirmation under penalty of perjury.  See 28 U.S.C. § 1746; cf. Schroeder, 55 F.3d at 460 n.10.  The declaration is also defective with respect to this documentary evidence because Dumas never identifies any of the documents he has attached to it and never purports to authenticate them.  See Hal Roach Studios, 896 F.2d at 1550-51.  To the extent that any of these documents are self-authenticating under Federal Rule of Evidence 902, Dumas again fails to cite to any particular document or portion of a document as Rule 56(c)(1)(A) requires.  See First Dumas Decl. at 1-2; Opp'n at *3-*6; see also Carmen, 237 F.3d at 1031.[5]  Therefore, the Court does not consider these exhibits in its resolution of NUMMI's motion for summary judgment.

### 3. Second Dumas Declaration

Dumas's second declaration in support of his Opposition, filed on August 11, 2011, also lacks an affirmation under penalty of perjury.  See 28 U.S.C. § 1746; cf. Schroeder, 55 F.3d at 460 n.10.  Further, this declaration is untimely.  See Order Modifying Scheduling Order at 4, Dkt. 52 ("Plaintiff's opposition shall be filed by no later than August 9, 2011.").  Dumas neither sought nor obtained leave of Court to submit a declaration beyond the scheduled deadline.  In light of these defects, the Court does not consider Dumas's August 11, 2011, declaration in its resolution of NUMMI's motion for summary judgment.  See, e.g., Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001).[6]

### 4. Robinson Declaration

Dumas also filed a declaration from Raydale Robinson ("Robinson"), a union "committee man" employed at NUMMI.  Robinson Decl. ¶ 1.  NUMMI raises two objections to the Robinson declaration.  See Reply at 3-4.  First, NUMMI argues that two of Robinson's statements—i.e., that team members complained to him about Emery's behavior and his "threatening ways," and that he (Robinson) "got into it" with Emery,

---

[5] Dumas's Opposition is not paginated, and it appears that the pages are out of order as filed.  Nevertheless, the Court uses ECF pagination to cite to the pages in the order in which they appear in Docket 59.

[6] In any event, this declaration provides no material facts that are not already included in Dumas's deposition testimony which is properly before the Court.

Robinson Decl. ¶¶ 3, 6—constitute inadmissible character evidence and hearsay under Federal Rules of Evidence 404(a) and 802, respectively.  See id. at 3.  Second, NUMMI argues that Robinson's declaration is irrelevant to Dumas's eight claims for relief.  See id. (citing Fed. R. Evid. 402).

Taking NUMMI's contentions in order, the Court agrees that Robinson's description of complaints he received from Dumas's co-workers constitutes inadmissible hearsay.  See Fed. R. Evid. 802.  However, Robinson's statement that he "got into it" with Emery does not constitute impermissible evidence of character traits under Rule 404(a) or impermissible hearsay under Rule 802.  He does not describe any character trait or anything Emery purportedly said; rather, Robinson recounts only that he and Emery apparently had some type of unspecified conflict.  See Robinson Decl. ¶ 7.  Nevertheless, to the extent that Robinson's statement is intended to show Emery's propensity to engage in conflicts with other employees such as Dumas, this statement inadmissible as evidence of other "wrongs" or "acts" intended to prove Emery's character.  See Fed. R. Evid. 404(b).

Turning to NUMMI's second contention, the Court finds that Robinson's declaration—and the attached copy of a complaint Dumas filed about being subject to the "last chance agreement"—are only relevant to the alleged harassment Dumas suffered *after* returning to NUMMI in July 2009.  See Fed. R. Evid. 402.  Robinson states that he was involved in handling Dumas's "issue" with NUMMI after his return to work in July 2009, and he claims no personal knowledge of any events—including Dumas's administrative leave—that took place prior to July 2009.  See Robinson Decl. ¶ 3.  Therefore, the Court considers the admissible portions of the Robinson declaration only insofar as they are relevant to Dumas's retaliation claim.  See Fed. R. Evid. 402.

### B. ANALYSIS OF CLAIMS

NUMMI moves for summary judgment of all claims alleged in the Complaint.  Mot. Summ. J. at 2-3.  As will be set forth below, the Court GRANTS NUMMI's motion for summary judgment as to Dumas's second and fifth causes of action, both of which arise under federal law and are brought against NUMMI only.  The Court declines supplemental

1  jurisdiction over Dumas's remaining claims, all of which Dumas brought under California
2  law.

### 1. LMRA Preemption

In his second cause of action, Dumas claims that NUMMI wrongfully terminated him in violation of the implied covenant of good faith and fair dealing. FAC ¶¶ 17-18. This claim is preempted by section 301 of the Labor Management Relations Act ("LMRA"), which preempts a state law claim for relief under the covenant of good faith and fair dealing that requires analysis of the terms in a collective bargaining agreement. See Newberry v. Pac. Racing Ass'n, 854 F.2d 1142, 1147-48 (9th Cir. 1988) (citing Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985)). Summary judgment of a state-law claim is proper where the claim is preempted under federal law. See, e.g., Chae v. SLM Corp., 593 F.3d 936, 938 (9th Cir. 2010) (affirming summary judgment of state-law claims preempted by federal law).

Here, NUMMI has met its initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. See Celotex, 477 U.S. at 323. The FAC fails to allege the existence of any employment contract between NUMMI and Dumas, see FAC ¶¶ 17-18, and Dumas admits he is aware of no employment agreement between the parties *except for* the CBA and the Standards of Conduct and Good Attendance Program adopted pursuant to the CBA, see Dumas Dep. at 73, 81. To the extent that Dumas contends the CBA and standards of conduct adopted under the CBA constitute his employment contract, his claim is preempted by section 301 of the LMRA because the Court would have to interpret the CBA's provisions in order to determine if NUMMI acted in good faith thereunder. See Newberry, 854 F.2d at 1147-48.

Because NUMMI has satisfied its initial burden under Rule 56, the burden shifts to Dumas to designate specific facts raising a genuine issue for trial. See Celotex, 477 U.S. at 324. Dumas fails to meet this burden. In his Opposition, he asserts that NUMMI violated the CBA. Opp'n at *4. Dumas cannot bring a state claim for breach of the covenant of good faith and fair dealing where, as here, his employment relationship is memorialized in

a CBA.  See Newberry, 854 F.2d at 1147-48.  Such a claim would require the Court to interpret provisions of the CBA and is thus preempted by section 301 of the LMRA.  See id.  Therefore, NUMMI is entitled to summary judgment of Dumas's second cause of action.

### 2. FMLA Discrimination

In his fifth cause of action, Dumas alleges that NUMMI discriminated and retaliated against him in violation of the FMLA.  FAC ¶¶ 31-36.  Dumas vaguely refers to the "adverse employment actions" NUMMI allegedly took against him, and he points specifically to NUMMI's decision to "discipline" and "terminate" him.  Id. ¶ 33.  He seeks actual damages of at least $4,000,000 and an undetermined amount of punitive damages.  Id. ¶¶ 35-36.

"The FMLA provides job security and leave entitlements for employees who need to take absences from work for personal medical reasons, to care for their newborn babies, or to care for family members with serious illnesses."  Liu v. Amway Corp, 347 F.3d 1125, 1132 (9th Cir. 2003) (citing 29 U.S.C. § 2612).  The FMLA entitles qualifying employees to take unpaid leave for up to twelve weeks each year, provided they have worked for the covered employer for twelve months.  Id.  It is unlawful for an employer to discriminate against an employee for exercising his or her rights under the FMLA.  See 29 U.S.C. § 2615(a)(1); Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1124 (9th Cir. 2001).  In order to prevail on an FMLA discrimination claim, an employee must prove by a preponderance of the evidence that taking FMLA leave constituted a "negative factor" in the employer's decision to take an adverse employment action against the employee.  See Liu, 347 F.3d at 1136 (quoting Bachelder, 259 F.3d at 1125); see also 29 C.F.R. § 825.220(c) ("employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA

leave be counted under 'no fault' attendance policies.").[7] An employee may prove his or her claim using both direct and circumstantial evidence. See Bachelder, 259 F.3d at 1125.

Here, NUMMI has met its initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law on Plaintiff's FMLA claim. See Celotex, 477 U.S. at 323. The evidence shows that NUMMI did not terminate Dumas's employment when it placed him on administrative leave in February 2009. Although Dumas believes NUMMI terminated him in February 2009, he concedes that has no evidence to support such a claim and that he, in fact, was never informed that his employment had been terminated. See Dumas Dep. at 82-83, 171-72. He further acknowledges that NUMMI representatives informed him that he would continue to receive benefits during his leave and that they would be in contact with him. See id. Indeed, NUMMI contacted Dumas on multiple occasions during his administrative leave seeking an explanation for his absences. See Wakefield Decl. ¶¶ 20-22 & Exs. 9-11. NUMMI's records show that Dumas was not terminated at any point in 2009 and that his benefits were never interrupted during his entire administrative leave. See Wakefield Decl. ¶¶ 16, 18, 24-25. Rather, the evidence shows that Dumas was not terminated until NUMMI shut down its entire operation in April 2010. See id. ¶ 4; Dumas Dep. 215. The record is entirely devoid of any evidence suggesting a nexus between Dumas's FMLA leave and his separation in April 2010. See, e.g., Wakefield Decl. ¶ 4 (noting that NUMMI terminated all hourly team members in April 2010 as a result of the plant's closure).

The record is similarly devoid of any evidence establishing a nexus between Dumas's FMLA leaves and NUMMI's decision to take disciplinary actions against him. NUMMI produced three Written Corrective Notices issued to Dumas during a six-month period in 2008. See id. Ex. 3. It also produced a copy of the notice Dumas received

---

[7] The Ninth Circuit has not yet decided whether the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to FMLA retaliation claims. See Liu, 347 F.3d at 1136 n.10. The Court does not reach this issue, as Dumas's claim fails even under the more generous "negative factor" test applied to FMLA discrimination claims. See id. at 1136.

explaining his later-rescinded suspension in January 2009. See id. Ex. 5. Each of these documents relates to Dumas's violations of NUMMI's Standards of Conduct and Good Attendance Program adopted pursuant to the CBA. See id. Exs. 3, 5; see also id. Ex. 1 at 3, Dkt. 54-1 (NUMMI policy regarding absences). Further, NUMMI produced evidence that it rescinded Dumas's January 2009 suspension upon determining that one of the triggering absences may have qualified as FMLA leave. See Wakefield Decl. ¶¶ 13-14 & Ex. 8.

   Finally, NUMMI has presented evidence demonstrating that Dumas's FMLA leave bears no relation to its decision to place him on administrative leave in February 2009. Rather, NUMMI placed Dumas on administrative leave after he refused to provide any explanation for missing nine consecutive work days between January 20 and 30, 2009. See Wakefield Decl. ¶¶ 14-18. NUMMI officials actively invited Dumas to provide an excuse for those absences—including an FMLA-qualifying excuse—in a meeting on February 2, 2009. See id. ¶ 18 & Exs. 6-7. Dumas refused to provide any explanation for his absences, and NUMMI therefore had a right to terminate his employment under Article XI, Section 3, paragraphs (c) and (d) of the CBA. See id. Ex. 6 (CBA excerpt stating employment will be terminated if employee misses four consecutive work days without prior notice or six consecutive work days without company-approved leave). But instead of firing him, NUMMI placed Dumas on administrative leave and continued seeking an explanation for his absences. See Wakefield Decl. ¶¶ 20-22 & Exs. 9-11. In sum, not only is the record devoid of any evidence suggesting that NUMMI's actions amount to FMLA discrimination or retaliation, but the evidence plainly shows that NUMMI placed Dumas on administrative leave precisely because he failed to provide any FMLA-qualifying or other acceptable excuse for his nine absences between January 20 and 30, 2009.[8]

   Because NUMMI met its initial burden, the burden shifts to Dumas to designate

---

[8] Dumas offered no explanation until nearly three months after he was placed on leave, and even then he purported to explain fewer than half of the absences and provided no supporting documentation. See Wakefield Decl. Ex. 12. Rather than terminate Dumas as allowed under the CBA, NUMMI allowed him to return to work in July 2009, and he worked at NUMMI until the plant closed in April 2010. Wakefield Decl. ¶¶ 4, 24; Dumas Dep. 215.

specific facts raising a genuine issue for trial.  See Celotex, 477 U.S. at 324.  He has failed to meet this burden.  In his Opposition, Dumas simply states that NUMMI terminated him twice while he was on intermittent FMLA leave.  Opp'n at *4.  Yet, he presents no evidence that he was terminated in February 2009.  Nor does he present any evidence suggesting that his FMLA leaves were a negative factor in NUMMI's decisions to place him on administrative leave in February 2009 and to terminate his employment when the plant shut down in April 2010.  Cf. Liu, 347 F.3d at 1136; Bachelder, 259 F.3d at 1125.  Therefore, NUMMI is entitled to summary judgment of Dumas's fifth cause of action.

### 3. State Law Claims

All of Dumas's remaining claims are based upon California state law.  A district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3); Sanford v. MemberWorks, Inc., 625 F.3d 550, 561 (9th Cir. 2010).  "'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'"  Sanford, 625 F.3d at 561 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988), superseded on other grounds by statute as recognized in Fent v. Okla. Water Res. Bd., 235 F.3d 553, 557 (10th Cir. 2000)).  Because the Court has granted summary judgment in favor of NUMMI with respect to both causes of action implicating federal law, the Court declines to assert supplemental jurisdiction over his remaining claims and remands them to state court.  See City of Colton v. Am. Promotional Events, Inc.-West, 614 F.3d 998, 1008 (9th Cir. 2010) (holding that district court acted within its discretion in declining to exercise supplemental jurisdiction after granting summary judgment on all federal claims); see also Harrell v. 20th Century Ins. Co., 934 F.2d 203, 205 (9th Cir. 1991) ("it is generally preferable for a district court to remand remaining pendant claims to state court . . . .").

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. NUMMI's motion for summary judgment is GRANTED as to Dumas's second and fifth causes of action.

2. The Court declines to assert supplemental jurisdiction over Dumas's remaining state law claims, and therefore, NUMMI's summary judgment motion as to those claims is DENIED without prejudice.

3. The action is REMANDED forthwith to the Superior Court of the State of California, County of Alameda.

4. The Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.

Dated: October 19, 2011

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

RONALD DUMAS et al,

        Plaintiff,

  v.

NEW UNITED MOTOR MANUFACTURING, INC et al,

        Defendant.
_____/

Case Number: CV09-05290 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 20, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Ronald Dumas
942 91st Avenue
Oakland, CA 94603

Dated: October 20, 2011

                Richard W. Wieking, Clerk

                By: LISA R CLARK, Deputy Clerk